IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA GLAZIERS, ARCHITECTURAL METAL AND GLASSWORKERS PENSIONS TRUST, DOUGLAS CHRISTOPHER, Trustee, and JOHN MAGGIORE, Trustee,<br><br>Plaintiffs,<br><br>v.<br><br>ARCHITECTURAL GENERAL CONSTRUCTION, INC., a California Corporation, ADVANCE GLASS CONSTRUCTION, INC., a California Corporation, AMERASIA GROUP INTERNATIONAL, INC., a California Corporation, KEVIN MESBAH, as an individual, and DOES 1 to 10,<br><br>Defendants. | No. C 10-03919 WHA<br><br>**ORDER PARTIALLY GRANTING MOTION FOR DEFAULT JUDGMENT AND VACATING HEARING** |

**INTRODUCTION**

In this action to enforce a previous ERISA withdrawal liability judgment, this order partially grants plaintiffs' motion for entry of default judgment.

**STATEMENT**

In a previous ERISA action, plaintiffs obtained a judgment against Architectural Glass Construction, Inc., which is not a party to this action. That judgment was entered on December 11, 2009, in the amount of $352,733.60 (C 08-05018 WHA Dkt. Nos. 39, 42).

Plaintiffs have been unable to collect payment of the judgment from Architectural Glass. Under the applicable ERISA laws, plaintiffs bring this action to enforce the previous judgment against three other companies that are under common control with Architectural Glass.

Plaintiffs filed the complaint in this action on September 1, 2010. All four defendants in this action were served properly, but none of them made any appearance, pleading, or defense until defendant Kevin Mesbah attended the first hearing on the instant motion. Defendants are not minors or incompetent persons. The clerk entered default as to all four defendants on October 15, 2010. Two months later, plaintiffs filed the instant motion for entry of default judgment and requested an order to show cause why Kevin Mesbah should not be held in contempt for failure to obey a subpoena. A hearing on this motion was set for January 27, 2011, meaning that defendants' opposition or statement of non-opposition to the motion was due on January 6. No such filing was made.

On January 13, plaintiffs filed a request that their motion for default judgment and their request for a show-cause order be decided without a hearing. On January 18, this request was granted in part and denied in part; an order was issued stating that the motion for default judgment would be decided after the January 27 hearing and ordering all defendants to attend the hearing. All defendants were ordered to show cause at the hearing why default judgment should not be entered against them, and defendant Kevin Mesbah was ordered to show cause at the hearing why he should not be held in contempt for failing to obey the subpoena duces tecum served upon him on June 28, 2010. The subpoena requested documents regarding Architectural Glass's control group members and assets, but Mesbah allegedly provided only insufficient written responses.

At the January 27 hearing, Mesbah represented himself and the three corporate defendants; this was the first appearance made on behalf of any defendant in this action. He explained that his failure to appear or defend earlier was due to health problems requiring his hospitalization. During the hearing, Mesbah supplied plaintiffs' counsel with copies of tax records they sought. At the conclusion of the January 27 hearing, the parties were instructed to meet and confer in an effort to settle the case. On the record, the parties agreed to meet at

2

1  11:00 a.m. on January 31 for this purpose. A further hearing on the motion was set for March 3
2  in the event that the parties would be unable to reach a settlement agreement over the next several
3  weeks. Additionally, Mesbah was notified of the procedures through which he could request
4  appointment of a pro bono attorney (Dkt. No. 34). Mesbah has made no such request.

5  On February 24, plaintiffs filed a case management statement reporting that the parties
6  had failed to even meet and confer, much less reach a settlement agreement. According to
7  plaintiffs, Mesbah and plaintiffs' counsel conversed outside the courtroom immediately following
8  the January 27 hearing. During this conversation, Mesbah supposedly "informed Plaintiffs'
9  counsel that due to his medical treatments he needed sufficient opportunity to gather the
10 documents and visit the Court's Legal Help Center." The parties then privately agreed to meet
11 and confer at 11:00 a.m. on February 22, instead of January 31. Mesbah, however, failed to
12 appear for the meeting and did not call to reschedule it (Dkt. No. 37 at ¶¶ 10–11).

13 A second hearing on the instant motion was held on March 3, 2011. Mesbah appeared at
14 the hearing with Attorney Dennis Carr, who explained that he intended to represent Mesbah after
15 being admitted to the Northern District. Attorney Carr has not applied for admission to this
16 district. At the hearing, Mesbah explained that his continuing health problems and a recent
17 surgery had prevented him from attending or rescheduling the February 22 meeting. Mesbah,
18 however, admitted that his surgery was two weeks before the scheduled meeting, and that he was
19 not in the hospital on February 22. At the conclusion of the March 3 hearing, Mesbah and his
20 attorney were granted an extension until March 17 to file an opposition to the instant motion.
21 Additional dates were set for a reply and a further hearing (Dkt. No. 38). No opposition was ever
22 filed. On March 30, plaintiffs filed a request that their motion be decided without the
23 April 7 hearing, which would be the third hearing on the motion. In that filing, plaintiffs also
24 formally withdrew their request for an order to show cause why Mesbah should not be held in
25 contempt (Dkt. No 41).

**ANALYSIS**

27 A defendant must serve an answer within 21 days of being served with a summons and
28 complaint. FRCP 12(a)(1)(A)(i). All four defendants in this action were served with a summons

3

and complaint on September 3, 2010, but none of them filed an answer or made any other appearance until the January 27 hearing on the instant motion (Dkt. Nos. 8–11). The clerk entered default as to all four defendants on October 15, 2010. After entry of default, a plaintiff may apply for a default judgment against a defendant that has failed to plead or otherwise defend. FRCP 55(b)(2). The trial court has discretion to grant or deny the application, but default judgments generally are disfavored. Factors that may be considered in deciding whether to enter default judgment include the following: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). For the following reasons, these factors favor entry of default judgment against defendants.

### 1. MERITS AND SUFFICIENCY OF THE COMPLAINT.

With respect to determining liability and entry of default judgment, well-pled allegations in the complaint regarding liability are deemed true. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). This order finds that *Eitel* factors two, three, and five weigh in favor of the entry of default judgment against defendants.

The well-pled facts in the complaint establish that the corporate defendants are jointly and severally liable for the judgment plaintiffs seek to enforce. Under the ERISA laws, businesses under common control are treated as a single employer for purposes of withdrawal liability. 29 U.S.C. 1301(b)(1); *Bd. of Trs. of W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1013 (9th Cir. 1987). The judgment sought to be enforced was entered against Architectural Glass, a non-party to this action, following its failure to make payments for the withdrawal liability that was triggered by its withdrawal from the Northern California Glaziers, Architectural Metal & Glassworks Pension Trust. The judgment included unpaid withdrawal liability, interest, liquidated damages, costs, and attorney's fees. Based on a debtor examination of defendant Mesbah that plaintiffs conducted on July 16, 2010, defendant Mesbah is the 100% shareholder of Architectural Glass (the non-party to this action against which

4

the judgment was entered), and he also is the 100% shareholder of Architectural General Construction, Inc., Advance Glass Construction, Inc., and Amerasia Group International, Inc. (the three corporate defendants in this action). Accordingly, Architectural Glass is under common control with the three corporate defendants in this action, and all four companies are jointly and severally liable for the withdrawal liability judgment entered against Advance Glass. All material facts are pled in the complaint and verifiable.

### 2. REMAINING FACTORS.

This order finds that the remaining *Eitel* factors likewise favor entry of default judgment. *First*, if the motion were denied, plaintiffs may be unable to recover and provide the contributions owed to beneficiaries and members of the pension fund. *Second*, it is unlikely that default was the result of excusable neglect. This action was filed over seven months ago, and defendants were properly served. Defendant Mesbah has received multiple forms of notice, including a subpoena, and he has provided testimony at two separate debtor's examination sessions regarding this matter. Defendant Mesbah is acutely aware of the payment obligations for which his companies are responsible. After Mesbah appeared at the January 27 hearing and explained that his health problems made it difficult to defend the action, Mesbah was specifically warned that as this case proceeds, he must either appear or retain counsel to appear on his behalf (Dkt. No. 34). Despite being given multiple chances to do so, Mesbah has not taken any subsequent measures to request pro bono counsel, conduct settlement negotiations, or oppose the instant motion.

*Third*, although federal policy favors decisions on the merits, FRCP 55(b) permits entry of default judgment in situations such as this one, where defendants have failed to plead or otherwise substantively defend. *Fourth*, the sum of money at stake in this action is not unreasonable in light of the allegations in the complaint. In general, default judgment is disfavored where a large sum of money is involved. *See Eitel*, 782 F.2d at 1472 ("[B]ecause Eitel was seeking almost $3 million in damages from McCool and because the parties disputed material facts in the pleadings, we cannot say that the district court abused its discretion in denying the default judgment."). In

their motion for default judgment, plaintiffs seek a total of $390,463.22, which is an order of magnitude smaller than the amount mentioned in *Eitel*. This factor also favors entry of default judgment.

### 3. AMOUNT OF DEFAULT JUDGMENT.

Plaintiffs seek default judgment against the three corporate defendants, jointly and severally, in the amount of $390,463.22. This sum includes not only the unpaid withdrawal liability and interest thereon, but also liquidated damages, as well as attorney's fees and costs from various stages of this and the earlier action (Br. 2). Plaintiffs are overreaching in this request; they provide no authority showing why any amount other than the unpaid withdrawal liability may be adjudged against the corporate defendants. Accordingly, judgment will be entered only for the unpaid withdrawal liability and the interest it has accumulated. Plaintiffs represent that as of the January 27 hearing, this sum had run to a total of $299,370.16 (*ibid.*).

\*        \*        \*

Plaintiffs' motion also encouraged the Court to hold defendant Mesbah in contempt for failure to obey a subpoena in the underlying action. Because plaintiffs have since withdrawn their request regarding contempt of court, this order need not reach the contempt issue.

### CONCLUSION

Enough is enough. Plaintiffs filed their motion for entry of default judgment nearly four months ago. Defendant Mesbah has been given multiple opportunities to respond to the motion and to negotiate with plaintiffs, but he repeatedly has failed to do so. Plaintiffs' motion for entry of default judgment is **GRANTED IN PART** to the following extent. Judgment will be entered against all four defendants, jointly and severally, in the amount of $299,370.16. The third hearing on plaintiffs' motion, formerly set for April 7, 2011, is **VACATED**.

**IT IS SO ORDERED.**

Dated: April 4, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE